DAVID KORN *vs.* SEACONNET COAL COMPANY.

MARCH 17, 1920.

PRESENT: Sweetland, C. J., Vincent, Stearns, Rathbun, and Sweeney, JJ.

(1) "Lever Act." Coal Administration.

Fuel administrators, under the so-called "Lever Act," were invested with plenary powers enabling them to determine in their discretion to whom any coal brought into this State should be delivered without regard to the claim of any party who might be the consignee thereof; therefore when such administrator by written order diverted certain coal from plaintiff to defendant, and it did not appear that any other order regarding such coal was given the railroad company or to the defendant, it was immaterial what may have been the conversation between plaintiff and the administrator subsequent to the order to the railroad company, since it was the final intention of the administrator from the facts that the original order should stand and defendant had the right to take the coal at the wholesale price at the mines.

ASSUMPSIT.    Heard on exceptions of plaintiff and overruled.

VINCENT, J.   This is an action of assumpsit brought to recover the value of a certain quantity of coal and is now before us on the plaintiff's exceptions to the rulings of the Superior Court in the admission and exclusion of testimony and to the direction of a verdict in favor of the plaintiff for a sum which the plaintiff deems to be inadequate.

Both of the parties to the suit were dealers in coal in the city of Providence in December, 1918, and in the purchase and disposition of their stock in trade were under the supervision and direction of the Rhode Island State Fuel Administrator appointed in pursuance of an act of Congress, entitled "An Act to provide further for the national security and defense by encouraging the production, conserving the supply, and controlling the distribution of food products and fuel," popularly known as the "Lever Act."

In December, 1918, the defendant advised the fuel administrator that it was not receiving its proper allotment of coal and the fuel administrator upon investigation being satisfied that such was the case and that a quantity of anthracite coal which should have gone to the defendant had been sold to the plaintiff, thus giving the latter more than his proportionate share, issued the following order under date of December 11, 1918, and sent the same to the general agent of the New York, New Haven and Hartford Railroad Co.

"Dear Sir:—

Will you please divert to the Seaconnet Coal Co., South Providence, R. I. the next ten (10) cars of Domestic Anthracite which come to South Providence for David Korn.

Thanking you for an acknowledgment of this communication, we are

Very truly yours,

(H. METCALF.)

*Director of Distribution Division.*
*Federal Fuel Administration for Rhode Island."*

On December 13, 1918, ten cars of anthracite coal arrived at the South Providence yard consigned to the plaintiff and in accordance with the above order they were turned over to the defendant.   As to nine of these carloads the defendant sent a check to the plaintiff, which check the plaintiff received and cashed.   The price paid to the plaintiff for the coal contained in the nine cars was the wholesale or mine price, which was the cost thereof to him.   The defendant also paid the freight thereon.   The remaining car, No. 35,747, contained 37 long tons plus 1,200 pounds or 42 short tons plus 224 pounds.   The defendant paid the freight on this car No. 35,747 at the same time that it paid the freight on the other nine cars.   It is this coal which is the subject of the present controversy.

After the issuance of the foregoing order diverting this car of coal to the defendant the plaintiff met Mr. John T. Wilson, a deputy fuel administrator, and made certain representations to him regarding it.   There is some testimony that these representations were to the effect that the coal in this particular car was not the kind of coal to which the defendant company was entitled.   There is some conflict of testimony as to what was said at this interview between the plaintiff and the fuel administrator, the former claiming that it was agreed definitely that the car of coal should go to him while the latter states that he only agreed to re-divert the coal to the plaintiff in the event that he found his representations concerning it to be correct, but as he found them to be untrue he did not change the original order nor did he advise the railroad company or the defendant of any change in or modification of the same.

In our view of the case this conflict of testimony is of no importance.   The purpose of the so-called "Lever Act," was, among other things, to conserve and equitably distribute a restricted supply of coal among dealers in that commodity and through them to the public.   To effectively carry out such purpose fuel administrators were invested with plenary powers enabling them to determine, in their

discretion, to whom any or all coal brought into this State should be delivered without regard to the claim or claims of any party or parties who might be the consignee or consignees thereof. The carload of coal in question was thus diverted from the plaintiff, to whom it had been consigned, to the defendant and such diversion is not disputed. The plaintiff claims however that at a subsequent interview with the fuel administrator this carload of coal was turned back or re-diverted to him and that consequently he is entitled to recover from the defendant the retail price of the coal in Providence rather than the wholesale price which he had become obligated to pay, or had paid, for it at the mines.

If we assume that the fuel administrator agreed to turn over the carload of coal to the plaintiff, as the latter claims, such an agreement would not preclude the former from placing it elsewhere in the further exercise of his discretion and it is for that reason that the conflict of testimony as to what was said between the plaintiff and the fuel administrator becomes of no importance.

In dealing with these matters it appears to have been the practice of the fuel administrator, at least in cases where there was to be a diversion from the original consignee, to send to the carrier receiving and having possession of the coal a written order stating the quantity to be diverted and the respective names of the consignee and the party to whom delivery should be made. This course was pursued in reference to the ten carloads consigned to the plaintiff, one of which is the subject of the present controversy, and the plaintiff and defendant were notified of the action of the fuel administrator. It does not appear that any other order regarding this coal or any part thereof was given to the railroad company or that notice of any further order was given to the defendant. It seems to us that whatever may have been the conversation between the plaintiff and the fuel administrator, subsequent to the order to the railroad company, it was the final intention of the fuel administrator that the original order should stand and that the

carload of coal in question should be delivered to the defendant and that such final intention must be held to prevail.

The defendant company had the right to take the coal upon the order of the fuel administrator and so far as appears it did so take it at the wholesale price at the mines without any notice of the plaintiff's claim. It was not guilty of any tortious act. We think that the amount awarded to the plaintiff in the Superior Court based on the price of the coal at the mines is all that he is entitled to receive.

The plaintiff has waived his first exception. The second exception, relating to the exclusion of the "General Orders, Regulations and Rulings of the United States Fuel Administration," we find to be without merit. The third exception to the direction of a verdict has already been discussed.

The plaintiff's exceptions are overruled and the case is remitted to the Superior Court with direction to enter judgment for the plaintiff upon the verdict as directed.

*Bellin & Bellin, John F. Harlow, Jr.,* for plaintiff.

*Howard Sheffield, Charles R. Haslam,* for defendant.